OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant, v. MOYLAN C. FOX, Trustee, and F. M. HAYDEN, Respondents.

#### No. 1569. (78 Pac. 800.)

Eminent Domain: Condemnation: Benefits: Set-off.

Revised Statutes 1898, section 3598, provides that in assessing damages in condemnation proceedings the jury must assess the value of the property condemned; that if the property constitutes only a part of a large parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and how much the portion not sought to be condemned will be benefited by the construction of the improvement; and that, if the benefit shall be equal to the damage, the owner shall be allowed no damage except the value of the portion taken. *Held,* that where a railroad company, on constructing a line across a landowner's premises, abandoned an old line across the same premises a mile distant, the railroad was not entitled to have any benefit from the abandonment of the old line set off against the damage done the land adjoining the new line; the benefit which it may set off being only such as inured to the land adjacent to the right of way sought to be condemned, the railroad beng under no obligation to relinquish its old right of way, and the compensation to be made meaning compensation in money.

(Decided December 8, 1904.)

Appeal from the Third District Court, Salt Lake County,—*Hon. S. W. Stewart,* Judge.

Action to condemn a right of way.     From a judgment, the railroad company appealed.

AFFIRMED.

*Messrs. Whittemore & Cherrington* for appellant.

The only question involved in this appeal is whether the appellant was entitled at the trial of this case in the court below to show that it had abandoned its old line through the property of the respondents and by reason of such abandonment, that aside from the taking of the land desired for the right of way for the new line, it was no more of a detriment or inconvenience or damage to the respondents, as owners of the land described in the petition, for appellant to construct and operate its railroad along the new line than it would have been for appellant to have continued to maintain and operate its railroad along the old abandoned line through said land.

A map was offered in evidence by appellant, showing the tract of land described in its petition and the location of the old abandoned line of railroad and boundaries of the right of way through said tract of land and the new line of railroad being constructed, and the boundaries of the right of way sought to be acquired in this action, which map was received in evidence and marked "Plaintiff's Exhibit 1."

Evidence is material and relevant which tends to show special benefits to property claimed to be damaged, but not taken, for the purpose of reducing, or, rather, to the extent of the special benefits, of showing that there are no damages.   Cemetery Ass'n v. Railroad, 121 Ill. 199; Page v. Railway Co., 70 Ill. 328; Railroad v. Francis, Id. 238; Railroad v. Hall, 90 Ill. 42

In a Massachusetts case, similar to the one under consideration, the jury was instructed that if it were satisfied that the laying out and construction of the railroad had occasioned any benefit or advantage to the

lands of the petitioner through which the road passed, rendering the part not taken more convenient or useful to the petitioner, it would be the duty of the jury to allow for such benefit by way of set-off in favor of the railroad company. This instruction was sustained by the appellate court. Meachem v. Railroad, 4 Cush. 291; Upton v. Railroad 8 Cush. 600.

In the case of French v. City of Lowell, 117 Mass. 363, it was held that the special benefit derived by the release of the owner's land from the maintenance of an ancient sewer, for the convenience of adjoining estates, was properly considered. as a set-off in the assessment of the owner's damages for the taking of his land for a new sewer.

In the case of Israel et al., v. Jewett et al., 29 Iowa 475, the court announces the correct rule, in a case similar to the one at bar, to be "to determine the amount by which the damage for the new or relocated line would exceed the damages sustained by reason of the old one and allow that sum to the claimant." The court in that case held, as it should have been held in this case, that there was but one road in the case; it was simply a change of route for the road so that it ran over a new line, but it continued to be the same road, and that additional damages caused by the change should be allowed, and no more. If this rule had been recognized and followed by the court below, the jury, in awarding damages to the respondents, would never have allowed more than the value of the land taken for the right of way for the new line. A change of line of a railroad amounts to an abandonment of the original line. Stacey v. Railroad, 27 Vt. 39.

The old abandoned right of way through the lands of the respondents was two hundred feet wide, and comprised 25.49 acres, while the right of way for the new line is one hundred feet wide and comprises only 12.27 acres.

No one will undertake to deny that the portion of this tract of land, not sought to be condemned and

which was occupied by the old line of railroad, was bene-
fited by having the old line abandoned.

*Messrs. Sutherland, Van Cott & Allison* and *Wil-
liam D. Riter, Esq.*, for respondents.

As is well said in Lewis on Eminent Domain, at sec-
tion 471: ''When part of the tract is taken, just com-
pensation would . . . consist of the value of the
part taken and damages to the remainder, less any
special benefits to such remainder by reason of the tak-
ing and use of the part for the purpose proposed.''

This is in harmony with our contention, and with a
long line of authorities which declare that in assessing
the compensation to be paid for the appropriation of
lands for railroad purposes, the benefits to be deducted
must be those resulting directly to the land, a part of
which is taken, from the construction of the road
through the land. Railroad v. Blake, 116 Ill. 163;
Meacham v. Railroad 58 Mass. 291; Railroad v. Wald-
ron, 11 Minn. 513, 88 Am. Dec. 100; Railway v. Wiede,
25 Neb. 542, 41 N. W. 297; Railroad v. Collett, 6 Ohio
St. 182.

After stating that compensation must be made for
the value of the land actually taken, Judge Cooley says,
in his work on Constitutional Limitations, at page 569:
''Then there is further to be considered how much the
portion not taken is increased or diminished in value in
consequence of the appropriation.''

The doctrine announced by all the foregoing au-
thorities is crystallized into our statute, which express-
ly limits the benefits to be considered to those caused
''by the construction of the improvement proposed by
the plaintiff.'' Rev. Stat., sec. 3598, sub. 4.

But the appellant in the case at bar seeks to have
benefits assessed, and applied in reduction of damages,
which are not caused, ''by the construction of the im-
provements proposed by the plaintiff,'' but which re-
sult, if at all, entirely from the voluntary abandonment
of an old improvement.

## STATEMENT OF FACTS.

Plaintiff brought this action to condemn a right of way for its railroad across a certain section of land, the fee of which is owned by defendant Fox, as trustee, but which is occupied by defendant Hayden, under a lease from Fox. The land sought to be condemned is a strip 100 feet in width, and contains 12.27 acres. The record shows that defendant Fox owned, and defendant Hayden occupied, under a lease, an entire section of land in Salt Lake County. The strip of land which plaintiff sought to condemn in this action is across the northern portion of said section of land. Prior to this suit appellant had constructed, and had in operation, its line of railroad across the southern portion of said section, and nearly a mile distant from the new line. Plaintiff sought to show, upon the trial, that, when the new line across the northern portion of the section was constructed and operated, the plaintiff abandoned its old line across the southern part of the section, and that the defendants suffered no more damage by the construction and operation of the new line than they would have suffered if plaintiff had continued to maintain and operate its railroad along the old line. To the introduction of evidence of this character defendants objected which objection was sustained by the court. The case was submitted to a jury, who returned a verdict awarding defendant Fox $1,140.44 as compensation for the land taken, and $1,140.44 as damages to the land not taken, and to defendant Hayden $1,049.24, the value of his lease hold estate, upon which verdict the court entered judgment. From this judgment, and from the order overruling a motion for a new trial, plaintiff has appealed to this court.

McCARTY, J., after stating the facts delivered the opinion of the court.

The only question presented by this appeal is whether appellant was entitled at the trial of this cause to prove that it had abandoned its old line through the property of respondents, and by reason of such abandonment that, aside from the taking of the land described for the right of way for the new line, it was no more of a detriment or inconvenience or damage to respondents for appellant to construct and operate its railroad along the new line than it would have been for appellant to have continued to maintain and operate its railroad along the old line, which it sought to show it had abandoned. The contention of the appellant is to the effect that, by abandoning its old line across the southern portion of the section, it conferred a benefit upon respondents, and that appellant was entitled to have such benefit off-set against or deducted from the damages done the land adjoining the new right of way by reason of the construction and operation of the new line of railroad. The undisputed evidence shows "that, by reason of the construction and operation of the railroad by plaintiff, the lands owned by defendants and abutting upon the right of way sought to be acquired by plaintiff for a depth of ten to fifteen rods were lessened in value at least fifty per cent." Section 3598, Rev. St. 1898, among other things, provides that the assessment of damages in condemnation proceedings shall be as follows First. "The value of the property sought to be condemned and all improvements thereon pertaining to the realty." Second. "If the property sought to be condemned constitutes only a part of a large parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned, and the construction of the improvements in the manner proposed by the plaintiff." Third. "Seperately how much the portion not sought to be condemned, and such estate or interest therein, will be

benefited, if at all, by the construction of the improve-
ment proposed by plaintiff; and if the benefit shall be
equal to the damage assessed under subdivision two of
this section, the owner of the parcel shall be allowed no
compensation except the value of the portion taken."
It is plain that the benefits referred to in the foregoing
section of the statute are only such as inure to or direct-
ly affect the land adjacent to the right of way sought to
be condemned.   Chicago & E. R. Co. v. Blake, 116 Ill.
163, 4 N. E. 488; Meachem v. Fitchburg R. Co., 4 Cush.
(Mass.) 291; Winona & St. P. R. R. Co. v. Waldron, 11
Minn. 515 (Gil. 392), 83   Am. Dec. 100;   Chicago, K. &
N. Ry. Co. v. Wiebe, 25 Neb. 542, 41 N. W. 297; Little
Miami R. Co. v. Collet, 6 Ohio St. 182;   Cooley, Const.
Lim. 699.

The new right of way is nearly a mile distant from
the old one.   The damage done to adjoining lands by
the construction and operation of the new road is sep-
arate and distinct from the inconvenience and damage
caused by the construction and operation of the old line;
that is, the old line is entirely outside of the zone of
damage caused by the construction of the new.   Appel-
lant was under no contractual or legal obligation of any
kind to respondents to abandon or forfeit any right ac-
quired by it through the purchase of the old right of
way because of the condemnation of the new and the
construction and operation of a road thereon.   The
abandonment of the old line was an independent,
as well as voluntary, act on the part of appel-
lant, and in no sense was it the natural or necessary
result of the acquirement of the new.   If, under any
principle or rule of law, appellant had been compelled to
relinquish its title to the old right of way to respond-
ents when it acquired title to the new, then it might be
urged with some degree of consistency that there was
a corresponding obligation on the part of respondents
to accept the old roadbed as an off-set, in whole or in
part, for the damage caused by the new; but, as stated,
appellant was not legally bound to abandon its old right

of way, nor to relinquish any right or privilege acquir-
ed through the construction and operation of its road
thereon; neither were respondents under any obliga-
tion, legal or otherwise, to accept as an off-set any bene-
fit that may have accrued to them because of its aband-
onment.   As stated by counsel for respondents in their
brief: "When appellant entered on this land and con-
structed its new line, it became indebted to the respond-
ents. It could not liquidate that debt by compelling them
to accept land as payment, either in whole or in part."
For the rule is well settled by the great weight of auth-
ority that, when lands are taken under condemnation
proceedings, and any part of the remaining portion dam-
aged because of such taking, the owner is entitled to
"just compensation" in money, and cannot be compell-
ed to accept any other kind of property in lieu thereof.
In volume 2, Words & Phrases, 1354, it is said: "In the
exercise of the right of eminent domain, no just com-
pensation can be made for the property taken, except in
money.   Money is a common standard, by comparison
with which the value of anything may be ascertained.
Compensation is a recompense in value, a quid pro quo,
and must be in money. Land or anything else may be a
compensation, but then it must be at the election of the
party; it cannot be forced upon him; and an act of the
Legislature which provides that land may be taken and
paid for with other lands belonging to the state does not
provide a constitutional compensation."   The follow-
ing cases are cited in support of the rule thus declared:
Vanhorne's Lessee v. Dorrance, 2 U. S. (2 Dall.) 304,
315, 28 Fed. Cas. 1012, 1 L. Ed. 391; Alabama & F. R.
Co. v. Burkett, 46 Ala. 569.   And again it is said:
"Compensation, as used in the constitution, providing
that private property shall not be taken for public use
without just compensation, means the payment of the
valuation of the property taken, in money"—Citing
Loweree v. City of Newark, 38 N. J. Law (9 Vroom)
155.   The following authorities also declare this same
doctrine:   2 Lewis, Eminent Domain, 505; Burlington,

etc., R. Co. v. Schweikart, 10 Colo. 178, 14 Pac. 329; Commonwealth v. Peters, 2 Mass. 125; Central Ohio R. R. Co. v. Holler, 7 Ohio St. 220; Woodfolk v. R. R. Co., 2 Swan. (Tenn.) 434 et seq., 10 A. & E. Ency. Law (2 Ed.), 1145.

We find no reversible error in the record. The judgment is therefore affirmed, with costs.

BASKIN, C. J., and BARTCH, J., concur.